UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GERALDINE KELLY,

    Plaintiff,

v.                                                                    Case No: 8:18-CV-424-T-27JSS

LEE COUNTY R.V. SALES COMPANY, a
Florida Corporation d/b/a NORTH TRAIL
RV CENTER, a Florida Domestic Profit
Corporation, and NEWMAR
CORPORATION, a Foreign Corporation
for Profit,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** are Defendant Newmar's Motion for Summary Final Judgment (Dkt. 36), Plaintiff's Response (Dkt. 48), and Defendant Newmar's Reply (Dkt. 57); and Defendant Lee County RV Sales Company's Motion for Final Summary [Judgment] (Dkt. 42), Plaintiff's Response (Dkt. 52), and Defendant [Lee County R.V. Sales Company's] Reply (Dkt. 58). Upon consideration, Defendants' motions (Dkts. 36, 42) are **GRANTED**.

I.    BACKGROUND AND UNDISPUTED MATERIAL FACTS

Plaintiff Geraldine Kelly brought this action alleging a breach of warranty claim against Defendants Lee County R.V. Sales Company d/b/a North Trail RV Center ("North Trail") and Newmar Corporation ("Newmar"). She alleges that Defendants provided her with certain warranties when she purchased a recreational vehicle, and that Defendants breached these warranties by failing to repair defects in the vehicle after receiving notice of them.

1

Plaintiff's Third Amended Complaint alleges four counts: (1) "Breach of Obligations Under the Magnuson-Moss Federal Warranty Improvement Act Against Seller," (2) "Breach of Obligations Under the Magnuson-Moss Federal Warranty Improvement Act Against Manufacturer," (3) "Violation of Statutory Warranty Under Sec. 320.835, Fla. Stat., Against Seller," and (4) "Violation of Statutory Warranty Under Sec. 320.835, Fla. Stat., Against Manufacturer." (Dkt. 29, Third Am. Comp.).

The following material facts are undisputed. On June 4, 2014, Kelly went to North Trail, a dealership in Fort Myers, to purchase a 2014 Newmar Canyon Star recreational vehicle (the "RV") that she had ordered in February of that year. (Dkt. 41-1, G. Kelly Dep. Part 1, at 35:25 - 36:1-3). She noticed that it did not include a rear awning and requested that North Trail have one installed. (Id. at 39:10-11; 40:11-16).

Kelly and North Trail proceeded with the purchase that day. The sale was made pursuant to a written purchase contract. (Id. at 37:4-7, 38:17-19). When she signed the contract, North Trail informed her that the RV came with Newmar's twelve-month limited warranty, which would expire on June 3, 2015. (Id. at 46:22-25; 47:1-5; 51:12-17; Dkt. 41-3, Exh. 4, p. 9). In addition to signing the purchase contract, North Trail and Kelly signed a pre-delivery and acceptance declaration form. (Dkt. 41-1 at 55:7-17; Dkt. 41-3, Exh. 5, p. 10). This form, also referred to as the pre-delivery inspection form, reflects that North Trail reviewed and explained to Kelly's satisfaction, the various components, systems and features of the RV. (Dkt. 41-1 at 53:2-5; 54:8-10; 55:7-11). Kelly did not have any questions about the RV. (Id. at 53:18-21; 60:1-4).

Kelly testified that prior to the sale of the RV she had never spoken to anyone from Newmar. (Id. at 60:25 - 61:1-3). And at the time of the sale, no one from Newmar was present. (Id. at 61:8-11; 62:5-9).[1]

A few weeks after the purchase, after the rear awning was installed, Kelly went back to North Trail and took possession of the RV. (Dkt. 41-1 at 58:12-14; Dkt. 41-2 at 77:13-23). At that time, it had 1,314 miles on the odometer. (Dkt. 41-1 at 44:14-19). When she picked up the RV and drove it home, she did not notice any problems. (Dkt. 41-2 at 77:24-25 - 78:1-2).

Between the time she purchased the RV and the time she filed suit, the RV underwent numerous repairs and was subject to several manufacturer's recalls. (Dkt. 41-1 at 19:3; 41:14-18; 75:9; Dkt. 41-2 at 93:20-22; 109:7-8). Repairs were made during her first year of warranty coverage. (Id.). Some of these repairs were made to the RV's slide-out rooms and windshield. (Dkt. 41-2 at 121:3-6). In October 2014, a repair was made to the driver's side slide at an unauthorized repair facility. (Id. at 152:14-21). And in November 2014, North Trail made a repair to the bedroom side slide. (Id. at 120:13-17; 152:1-5). As for the windshield, she testified that sometime during her first year of ownership it "fell out" and that North Trail came to her home and resecured the window and its molding. (Id. at 140:19-24; 141:1-15). Approximately two to three years later, the windshield's outside molding started to come loose, and North Trail again made the repair. (Id. at 142:8-19).

Kelly did not have to pay for any of the repairs made during her first year of ownership because they fell under Newmar's warranty's coverage. (Dkt. 41-1 at 49:14-18; 78:13-21; 79:6-14; Dkt. 41-2 at 130:13-19). And although the RV continued to need repairs and routine maintenance after the first year, some repairs were performed without charge. (Dkt. 50-2, p. 18).

---

[1] Kelly also testified that she does not possess any knowledge regarding the legal relationship between the Defendants. (Dkt. 41-2, G. Kelly Dep. Part 2, at 76:24-25 - 77:8-11).

3

Despite these post-warranty repairs, she testified that she received the benefits of Newmar's limited warranty coverage for the first twelve months of her ownership. (Dkt. 41-2 at 116:19-23).[2]

When asked about the remaining defects in the RV, Kelly stated that the two slide-out rooms and front windshield remain defective. (Id. at 140:10-15; 154:24-25).[3] And when asked during her deposition if everything else with the RV was working properly, Kelly answered, "Yes." (Id. at 155:4-8).

When asked how the slides were defective, she testified, "[o]nce you get them out, you can't get them in. And the other one sounds like -- when it starts to go out, it makes so much noise you think it's going to break so you don't put it out. It vibrates the whole motorhome." (Id. at 138:21-25; 139:1-2). As for the windshield, Kelly testified that in July 2018, she noticed that it was "coming out." (Id. at 139:20-24; 140:6). Since then, the RV has remained parked at her house, with an accrued mileage of approximately 37,000. (Dkt. 41-1 at 73:7-21; Dkt. 41-2 at 115:1-3). She has not taken the RV to any repair facility to have her concerns addressed, corrected, serviced, or repaired. (Dkt. 41-2 at 138:18-20; 139:25; 140:1-9).

According to Kelly, she did not retain an expert, nor does she consider herself one. (Dkt. 41-1 at 18:15-17). Moreover, she testified that she possesses no educational training or expertise in the monetary appraisal of RVs, has never been trained on valuing or appraising RVs, does not know how to appraise the value of RVs, with or without defects, has no technical or mechanical training on RVs, does not know how to diagnose or repair RVs, does not know how to appraise or value the cost of repairs to RVs, has never repaired RVs, has never done any appraisal on the

---

[2] According to Kelly, neither Newmar or North Trail ever refused or declined to address any warranty repairs during her first year of ownership. (Id. at 153:11-14).
[3] Although Defendants dispute that these parts are defective, it is undisputed that Kelly's testimony limited the current defects in the RV to these parts.

subject RV, and has never taken the subject RV to anyone to have its monetary value appraised, or to have it inspected. (Id. at 13:18-25 - 16:1-11).

Based on these facts, both Defendants move for summary judgment. For the reasons set forth below, Defendants are entitled to summary judgment.

## II. STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). All facts are viewed and all reasonable inferences are drawn in the light most favorable to the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the initial burden of showing that there are no genuine disputes of material fact. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories, and admissions on file to designate facts showing a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. A court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, a court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *See id.*

## III. DISCUSSION

### A. Counts I and II: Magnuson Moss Warranty Act

The Magnuson Moss Warranty Act ("MMWA") is a federal warranty enforcement statute. It does not create or require any warranties from manufacturers or dealers. 15. U.S.C. § 2302(2)(b) ("[N]othing in this chapter . . . shall be deemed . . . [to] require a consumer product or any of its components to be warranted."). "[E]xcept in the specific instances in which Magnuson-Moss expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law." *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986). A consumer may file a claim for a breach of warranty in conjunction with the MMWA, if a product manufacturer or dealer issues a warranty and fails to honor its terms. *Bailey v. Monaco Coach Corp.*, 350 F. Supp. 2d 1036, 1043 (N.D. Ga. 2004), *aff'd* 168 F. App'x 893 (11th Cir. 2006) (finding that absent an actionable warranty claim, there can be no violation of the MMWA). In sum, a breach of warranty claim under the MMWA is dependent upon a viable underlying state breach of warranty claim. *Burns v. Winnebago*, Case No. 8:11-CV-354-T-24, 2012 WL 171088, at *4 (M.D. Fla. Jan. 20, 2012), *aff'd* 492 F. App'x 44, 49 (11th Cir. 2012) (affirming summary judgment on a recreational vehicle MMWA claim because the underlying breach of warranty claim failed).

Kelly brings claims under the MMWA against each Defendant for alleged breaches of various express and implied warranties made pursuant to her purchase of the RV. Because the purchase occurred in Florida, Florida substantive law applies. *See Walsh*, 807 F.2d at 1012.

#### i. MMWA Against North Trail (Count I)

In her Third Amended Complaint, Kelly alleges that North Trail made express and implied warranties on the RV that it failed to honor. Specifically, she alleges that North Trail "completed

a pre-delivery inspection form(s)," which "constitut[ed] a 'written warranty' under the terms and definitions of [the MMWA]." (Dkt. 29 ¶ 9(A)). Based on this form, she alleges North Trail "impliedly warranted that said recreational vehicle was of merchantable quality, which warranty it breached . . . ." (Id. ¶ (B)). As a result of the breach, she "demands judgment for damages and/or refund together with incidental and consequential damages," as well as attorney's fees. (Id. ¶ 12). From these allegations, it appears that Kelly's MMWA claim is based on the underlying written warranty (pre-delivery inspection form) that North Trail provided and the implied warranties of merchantability and fitness for a particular purpose.[4]

North Trail raises several arguments in support of summary judgment on Count I.[5] Essentially, North Trail contends the RV was sold pursuant to a merged and integrated purchase contract that conspicuously disclaimed all warranties, express and implied, therefore entitling North Trail to summary judgment on all warranty claims. (Dkt. 42, p. 2).

In her response, Kelly argues that North Trail warranted but failed to repair the RV, issued a warranty that the RV would be free from defects in material or workmanship, and that discovery is not complete. (Dkt. 52, pp. 1-3). Kelly summarily addresses North Trail's contentions in a section titled "Plaintiff's Response to Defendant's Analysis." (Dkt. 52, pp. 12-14). In this section, she includes argument that North Trail's warranty did not comply with the MMWA; that if she had not executed the purchase contract she would not have received the RV she waited months to obtain; that because the Third Amended Complaint was not subject to a motion to dismiss, North

---

[4] To the extent Kelly argues that her MMWA claim is based on North Trail's breach of Florida's statutory warranty under Fla. Stat. § 320.835, this argument fails. *See* Section B, *infra*.

[5] North Trail's arguments include: (1) "Having Not Pled Conspicuousness, Plaintiff Waived It," (2) "The Warranty Disclaimers are 'Conspicuous" As A Matter Of Law," (3) "Additional Language Plainly States No Implied Warranty Exists," (4) "Plaintiff Read And Accepted The Warranty Disclaimers," (5) "Because No Valid State Law Warranty Claim Exists Against North Trail RV, No Valid MMWA Claim Exists," (6) "No 'Revocation Of Acceptance' Claim Is Pled, Nor Would One Be Tenable Against North Trail RV," and (7) "The PURCHASE CONTRACT Is Fully Merged And Integrated." (Dkt. 42, pp. 11-17) (emphasis in original).

Trail's motion for summary judgment is improper; and that Newmar has full time employees working at North Trail. (Id.). Each of these arguments, however, is misguided, not supported by authority, and is devoid of citations to the record. *See* (id.). Notwithstanding, under applicable Florida law, the purchase contract expressly disclaimed all warranties.

In Florida, sellers of goods are authorized to exclude warranties, both expressed and implied. *See* Fla. Stat. § 672.316. To disclaim an implied warranty of merchantability, "the language must mention merchantability and in case of a writing must be conspicuous . . . ." Fla. Stat. § 672.316(2). And to exclude an implied warranty of fitness for a particular purpose, "the exclusion must be by a writing and conspicuous." *Id.* A term or clause is conspicuous when it is written, displayed, or presented so that a reasonable person to whom it will operate against should have noticed it. Fla. Stat. § 671.201(10).[6]

The purchase contract signed by Kelly and North Trail expressly and conspicuously disclaims all warranties as required under Fla. Stat. § 672.316. As noted, the RV was purchased at North Trail pursuant to a written purchase contract. (Dkt. 41-1 at 37:4-7, 38:17-19). The purchase contract consists of a double-sided, single page document, which includes signatures from Kelly and a representative of North Trail. (Id. 37:8-14; Dkt. 41-3, p. 6). The front of the purchase contract includes the following disclaimer in bold-face, capitalized letters:

---

[6] Conspicuous terms include the following:

(a) A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and

(b) Language in the body of a record or display in larger type than the surrounding text or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

*Id.*

> THE SELLER, NORTH TRAIL RV CENTER, HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND NORTH TRAIL RV CENTER NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE SALE OF SAID PRODUCTS.

(Dkt. 41-3, pp. 6-7) (emphasis in original). The reverse side of the purchase contract includes a similar, more detailed disclaimer, which appears in bold-face, underlined, capitalized letters:

> SELLER, NORTH TRAIL RV MAKES NO GUARANTEE OR WARRANTY, EXPRESS OR IMPLIED, AND HEREBY DISCLAIMS AND EXCLUDES THE IMPLIED WARRANTY OF MERCHANTABILITY AND THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE FROM THIS SALE TRANSACTION AND SHALL NOT APPLY TO THIS VEHICLE. BUYER UNDERSTANDS AND AGREES THAT NORTH TRAIL RV MAKES NO WARRANTY ON THIS VEHICLE AND THAT ANY PRE-DELIVERY INSPECTION OR SERVICE PERFORMED DOES NOT CREATE ANY WARRANTY OF ANY TYPE, EXPRESS OR IMPLIED. I UNDERSTAND AND AGREE THAT ALL PROVISIONS HEREIN ARE BINDING UPON ME AND SHALL APPLY IN ALL INSTANCES, EVEN IF I ELECT TO PURCHASE A SERVICE CONTRACT OR EXTENDED WARRANTY THROUGH NORTH TRAIL RV. I UNDERSTAND AND AGREE THAT THE MANUFACTURER(S) LIMITED WRITTEN WARRANTY(S) ON THIS VEHICLE, IF ANY, CONTAINS AND CONSTITUTES MY EXCLUSIVE AND SOLE REMEDY FOR ANY PROBLEMS OR DEFECTS THIS VEHICLE MIGHT CONTAIN. I UNDERSTAND AND AGREE THAT ANY OTHER REMEDIES, WHETHER ARISING FROM THE UNIFORM COMMERCIAL CODE OR OTHERWISE, INCLUDING BUT NOT LIMITED TO RESCISSION OR REVOCATION OF ACCEPTANCE, SHALL NOT BE AVAILABLE TO ME AGAINST NORTH TRAIL RV. I UNDERSTAND AND AGREE THAT ALL PROVISIONS HEREIN APPLY TO ME UNDER ALL CIRCUMSTANCES, EVEN IF ALL MY REMEDIES FAIL OF THEIR ESSENTIAL PURPOSE.

(Id.) (emphasis in original). As required by Fla. Stat. § 672.316, the warranty disclaimers are in writing, reference "merchantability," and are conspicuous as they appear in bold, capitalized letters. *See Baker v. Brunswick Corp.*, No. 217CV572FTM99MRM, 2018 WL 1947433, at *4-5 (M.D. Fla. Apr. 25, 2018).

Moreover, the purchase contract contains "other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." *See* Fla. Stat. § 672.316(3)(a). The following language appears on the back page of the purchase contract, "**NORTH TRAIL RV MAKES NO WARRANTY ON THIS VEHICLE AND THAT ANY PRE-DELIVERY INSPECTION OR SERVICE PERFORMED DOES NOT CREATE ANY WARRANTY OF ANY TYPE, EXPRESS OR IMPLIED.**" (Dkt. 41-3, pp. 6-7). This language expressly negates Kelly's express/implied warranty claims based on the pre-delivery inspection form.[7] Because North Trail's purchase contract satisfies the requirements of Fla. Stat. § 672.316, it disclaimed all express and implied warranties.

Last, to the extent Kelly argues summary judgment should not be granted because discovery is not complete, that argument is without merit. Notably, Kelly waited until her response to raise this issue. And in raising this issue, she provides no grounds for why she failed to diligently pursue additional discovery. Procedurally, under Fed. R. Civ. P. 56(d), she could have requested a continuance by providing an affidavit or declaration including facts explaining why additional discovery would yield essential facts relevant to her response. Her response, however, is not a request under Rule 56(d), and even if it was, it would be denied. *See Kohser v. Protective Life Corp.*, 649 F. App'x 774, 776 (11th Cir. 2016) (affirming both summary judgment and the district court's decision to deny plaintiff a continuance under Rule 56(d) because "she was not diligent in completing her discovery. [She] was aware that her discovery was incomplete, but failed to take any action with the court . . .").

---

[7] Notably, Kelly does not provide any support for her contention that the pre-delivery inspection form constituted a written warranty. (*See* Dkt. 52, p. 3). Her argument, therefore, that North Trail issued a warranty that the RV would be free from defects in material or workmanship is not supported by any facts.

Accordingly, summary judgment on Kelly's MMWA claim in Count I is due to be granted in favor of North Trail, as she fails to show an underlying state breach of warranty claim.[8] *See Burns*, 2012 WL 171088, at *4.

### *ii. MMWA Against Newmar (Count II)*

In Count II, Kelly seems to argue that her claim against Newmar is based on both implied and express warranties. She first contends that North Trail's pre-delivery inspection form created an implied warranty of merchantability that Newmar breached. (Dkt. 29 ¶ 14(a)-(b)). To connect Newmar to the pre-delivery inspection form, she alleges that North Trail is Newmar's agent. (Id.). Later in Count II, she alleges "[a]t the time of the sale and delivery of the subject vehicle, [Newmar] delivered its express written limited warranty . . . ." (Id. ¶ 15(A)). She alleges that based on these allegations, "[p]ursuant to Florida Law, [Newmar], by virtue of the failure of the essential purpose of its warranties, became obligated under an implied warranty of merchantability to [Kelly] . . . ." (Id. ¶ 16). When read together, Kelly's MMWA claims are based on Newmar's alleged breach of its limited express warranty and breach of an implied warranty of merchantability. For these breaches, she "demands damages and/or refund together with incidental and consequential damages," as well as attorney's fees. (Id. ¶ 17).

### *Implied Warranty Claim*

In its motion for summary judgment, Newmar contends that the implied warranty claim within Count II fails because there is no privity between North Trail and Newmar. Notably, Kelly's response does not substantively address this contention, but merely disputes Newmar's "undisputed fact" that it and North Trail have no agency relationship. *See* (Dkt. 48, p. 20).

---

[8] Because summary judgment on Count I is due to be granted as a matter of law based on the language of the purchase contract, North Trail's other contentions are not addressed.

11

For MMWA claims, "courts must look to the relevant state law to determine the meaning and creation of any implied warranty." *Gill v. Blue Bird Body Co.*, 147 F. App'x 807, 810 (11th Cir. 2005). "The question of whether privity is required . . . hinges entirely on applicable state law." *Id.* Under Florida law, "privity of contract is a prerequisite to maintaining a claim for breach of implied warranty." *Bailey*, 350 F. Supp. 2d at 1047. "A plaintiff who purchases a product, but does not buy it directly from the defendant, is not in privity with that defendant." *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995). A plaintiff "cannot execute an end-run around Florida's historic privity requirement by employing principal-agent theory . . . ." *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 326 (Fla. 3d DCA 2008).

It is undisputed that Kelly purchased the RV from North Trail, the dealer, not Newmar, the manufacturer. (Dkt. 41-1 at 35:25 - 36:1-3; 61:8-11; 62:5-9). And despite her initial contention that North Trail was an agent of Newmar, she acknowledges in her testimony and response that she does not have evidence to support that contention. (Dkt. 41-2 at 77:8-11; Dkt. 48, p. 20). Further, the record evidence belies any agency claim. The purchase contract, signed by Kelly, provides that the "manufacturer" is the corporation that manufactured the vehicle, "it being understood by [Kelly] and [North Trail] that [North Trail] is in no respect the agent . . . ." (Dkt. 41-3, p. 7). Moreover, in the affidavit of Steve Klotz, Newmar Corporation's Consumer Affairs Manager, he avers that Newmar has "no agency relationship" with North Trail. (Dkt. 37, Steve Klotz Aff., ¶ 5). Kelly offers no evidence to counter this averment. Because Kelly lacks privity of contract with Newmar, her claim of breach of implied warranty fails as a matter of law. *See Bailey*, 350 F. Supp. 2d at 1048.

*Express Warranty Claim*

As discussed, because a claim under the MMWA is dependent upon having a viable underlying state breach of warranty claim, Kelly's breach of express warranty claim depends on whether Newmar failed to comply with its twelve-month limited warranty.

"A warranty is not breached simply because a defect occurs." *Id.* at 1044. For her claim to succeed, she must show (1) a warranty-covered defect existed in the RV at the time of sale; (2) notice of the defect was given to Newmar within a reasonable time after the defect was discovered; and (3) Newmar was unable to repair the defect. *See Davenport v. Thor Motor Coach, Inc.*, No. 3:14-CV-537-J25-PDB, 2015 WL 13021664, at *3 (M.D. Fla. Aug. 6, 2015), *aff'd* 661 F. App'x 997 (11th Cir. 2016); *Bailey*, 350 F. Supp. 2d at 1043. "Absent proof that Defendant refused to repair or otherwise failed to adequately repair the vehicle under warranty at any time, under Florida law, Plaintiffs must prove that the Defendant failed to comply with the limited express warranty's terms." *Davenport*, 2015 WL 13021664, at *3.

Newmar contends that Kelly's MMWA claim based on the alleged breach of its limited warranty should be dismissed as a matter of law for several reasons. According to Newmar, (1) "Plaintiff has no expert proof, and no competent evidence herself, of a Newmar defect, which falls within the 12 month Limited Warranty coverage terms, which remains 'unrepaired,'" (2) "[e]ven if she could demonstrate the essential elements for breach, a refund is unavailable under the MMWA for an alleged breach of a 'limited' warranty," and (3) "Plaintiff has no expert proof, and no competent evidence herself, of any legally cognizable damages." (Dkt. 36, p. 24).

In response, Kelly contends that Newmar "warranted but failed to repair the defective [RV] within a reasonable number of return visits and within a reasonable amount of time" and that "the subject RV was part of multiple recalls which defects Defendants failed to repair within a

reasonable number of service visits and within a reasonable amount of time . . . ." (Dkt. 48, pp. 1-2). To support these contentions, she focuses on these arguments: (1) "defects can be proven through circumstantial evidence," (2) "the repair history particular to Plaintiff's RV evidences the existence of defects that were subject to repairs on multiple occasions," (3) Newmar's warranty failed of its essential purpose, (4) the numerous recalls performed on the RV prove that it was defective, and (5) because Newmar made repairs after the warranty coverage expired the RV was defective. (Id. at pp. 6-13).[9]

Starting with the first argument, Newmar contends that Kelly cannot show that a Newmar defect existed at the time of the sale or during the limited warranty period. To support this contention, Newmar offers Kelly's deposition, as well as her response to the motion for summary judgment, to show that no genuine issue of material fact exists.

It is undisputed that Kelly herself is not an expert on RVs. (Dkt. 41-1 at 18:15-17). Second, she admits that she never retained an expert (Id.; Dkt. 48, p. 20). And although "expert testimony is not required to establish a defect if that defect is one that can be understood by the reasonable juror," *Bailey*, 350 F. Supp. 2d at 1045 (citation omitted),"where special knowledge, training or experience is required to provide evidence of specific facts, an expert opinion is required." *Davenport*, 2015 WL 13021664, at *5. As noted in *Davenport*, "the average juror likely has little knowledge of or experience pertaining to RV industry standards, value determination, appraisal or the mechanics associated with an RV." *Id.* (citing *Powers v. Lazy Days RV Center, Inc.*, No. 8:05-cv-1542-T-17-EAJ, 2007 WL 1064215, at *2 (M.D. Fla. Apr. 4, 2007)). Whether an expert is

---

[9] Kelly also includes in her response that Newmar's motion for summary judgment should be denied because her "discovery is not complete." This argument, however, fails for the same reason when she raised it in her response to North Trail's motion for summary judgment. *See* Section A(i), *supra*.

required therefore depends on the nature of the defects Kelly alleges exist. *See Bailey*, 350 F. Supp. 2d at 1045.

As noted, according to Kelly's testimony, the only existing defects on the RV are with its (1) driver's side slide-room, (2) passenger side slide-out room, (3) and the windshield. (Dkt. 41-2 at 140:10-15, 154:24-25).

Despite Kelly's argument that defects can be proven through circumstantial evidence, numerous courts in this Circuit have held that defects relating to "slide-outs" require expert testimony. *See Thomas v. Winnebago Industries, Inc.*, No. 8:16-CV-177-T-23TGW, 2017 WL 2348789, at *1 (M.D. Fla. May 30, 2017); *Pearson v. Winnebago Industries, Inc.*, No. 5:15-cv-43-Oc-PRL, 2016 WL 6893937, at *7 (M.D. Fla. Nov. 23, 2016); *McLaughlin v. Monaco RV LLC*, No. 8:14-cv-703-T-36TGW, 2015 WL 5355465, at *4 (M.D. Fla. Sept. 14, 2015); *Davenport*, 2015 WL 13021664, at *5. And, as the parties do not dispute, Kelly does not have an expert to testify about her RV. Rather, and as Newmar correctly argues, the evidence offered by Kelly regarding the defects in the slide-out rooms is limited to her own testimony. Notwithstanding, even if her testimony could establish a defect in the slides, she fails to identify any record evidence that would indicate the defect was present at the time of sale. *See Royal Typewriter Co., a Div. of Litton Bus. Sys. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1103 (11th Cir. 1983) ("[a] breach [of warranty] occurs only if the goods are defective upon delivery . . .").

And as for the windshield, Kelly's testimony is likewise insufficient to show a manufacturer's defect. The only evidence she submits regarding the windshield is her testimony that the windshield is "coming out." (Dkt. 41-2 at 139:20-24; 140:6). And like her first argument, even if this testimony could establish that the windshield is defective, she cannot prove that the defect existed at the time of sale. *See id.* Based on this limited evidence, Kelly's claim for breach

of express warranty due to alleged defects in the slide-out rooms and windshield fails as a matter of law.

Moreover, Newmar's undisputed evidence refutes any claims that these items remain defective. In support of its motion, Newmar provides the affidavits and reports of two experts, Mike Miller and Doug Lown, to show that no genuine dispute of material fact exists as to whether a Newmar defect exists in RV's slide-out rooms or windshield. According to Mike Miller, a Newmar Factory Service Technician with over thirty-five (35) years of experience with RVs, no unrepaired defect exists in either slide-out room or the windshield. (Dkt. 39, Aff. of Mike Miller, ¶¶ 2-5). In his report, Miller details his inspection and concludes that both slide-outs operate normally as designed, and that no Newmar defect exists. (Dkt. 39-1, Report, pp. 1-2). As to the windshield, Miller avers that upon review of the RV's various work orders, Kelly never submitted a claim for the windshield during the twelve-month warranty period. (Id. at p. 2). Moreover, his inspection revealed that the windshield is not even a Newmar product, but rather an after-market windshield installed at some point after she purchased the RV. (Id.). Notwithstanding, Miller examined the windshield and concluded that the only problem is that it is missing adhesive for the rubber lining. (Id.). The windshield itself works properly, and is not defective. (Id.).

Newmar's second expert, Doug Lown, made similar findings. In his affidavit and report, Lown, who possesses over thirty (30) years of RV experience, avers "that the subject RV has no unrepaired Newmar defects in the windshield, slide-out rooms, or elsewhere . . . ." (Dkt. 38, Aff. of Doug Lown, ¶¶ 2-6). In his report, Lown explains that the windshield "is in no need of repair," "is not the factory installed Newmar windshield . . . and although non-Newmar, this windshield fits and seals properly in its frame." (Dkt. 38-1, p. 2). And after inspecting the slide-out rooms, "[b]oth slide rooms operate properly, as designed and with no abnormal noise," "both fit properly,"

and "[m]y observation and testing indicates both slide out rooms are operating properly and no Newmar defect exists in either." (Id. at p. 3).

Tellingly, Kelly's response does not refute or mention either of Newmar's experts' affidavits or reports. In fact, her response is devoid of any argument that defects remain in the RV's slide-out rooms or windshield. Instead, it focuses on the RV's repair[10] and recall[11] history to show that "Defendant failed to adequately repair Plaintiff's RV following a reasonable opportunity or a reasonable number of attempts to do so." (Dkt. 48, p. 6). But without proof of an unrepaired, manufacturing defect that was present at the time of sale, any argument relating to the RV's repair or recall history is immaterial.[12]

Kelly's lack of evidence further negates any contention that the limited warranty failed in its essential purpose. (Dkt. 48, p. 8). Put simply, because she cannot show an unrepaired defect, it follows that she cannot show a Newmar defect that remains unrepaired after repeated, unsuccessful

---

[10] Her response includes argument relating to the various repairs made to the RV including, but not limited to, its door handle, compartment door, passenger side couch, rear furnace, rear entry steps, hot water heater, awnings, microwave, water pump, generator, and air conditioning. (Dkt. 48, pp. 2-4). Missing however, is any evidence that any defects remain in these parts.

[11] Kelly further contends that Newmar "failed to make prompt and successful repairs to [her] RV after various recall campaigns were put in effect." (Dkt. 48, p. 9). To support this contention, she lists various issues with the RV's water heater, fuel compartment, and triple steps that were subject to Newmar recalls and North Trail repairs. (Id. at pp. 9-13). This argument is foreclosed for two reasons. First, she does not establish nor allege that these parts remain defective. And contrary to her contention, during her deposition, she testified that besides the three defects listed above, everything else is working properly. (Dkt. 41-2 at 139:4-6; 155:4-8). Second, Kelly offers no proof that her RV suffered from the same defects for which the recalls were issued. *See Bailey*, 350 F. Supp. 2d at 1045 (rejecting plaintiff's argument that a recall constitutes direct evidence of a defect and finding that a recall notice is insufficient to create a triable issue of material fact regarding the existence of a defect). Last, the response mischaracterizes Kelly's testimony. (Dkt. 48, p. 9). Although Kelly did initially state that in the first year she brought the RV in 23 times (Dkt. 41-2 at 79:11-12), later in her testimony, she clarified that was not the case. (Id. at 149:15-17).

[12] Throughout her response, Kelly includes arguments such as, "The repair history particular to Plaintiff's RV evidences the existence of defects that were subject to repairs on multiple occasions," and "Defendant failed to adequately repair Plaintiff's RV following a reasonable opportunity or a reasonable number of attempts to do so." (Dkt. 48, p. 6). These arguments, however, and others like it, fail to include citations to the record and are therefore unsupported. In this Circuit, arguments in pleadings cannot substitute for record evidence. *See United States v. Smith*, 918 F.2d 1551, 1562 (11th Cir. 1990) ("[S]tatements and arguments of counsel are not evidence."). And as discussed, to survive summary judgment on a breach of express warranty claim, Kelly must show through record evidence that a defect exists in the RV and must put forth "sufficient proof to establish that the alleged problem is truly a defect in the manufacture or materials used to manufacture the motorhome." *Bailey*, 350 F. Supp. 2d at 1045. Her response fails to include any citations to the record evidence demonstrating that a defect currently exists in the RV, and moreover, that one existed in the RV at the time of sale. *See id.*; *Morrison*, 323 F.3d at 924.

efforts to repair. *See Parsons v. Motor Homes of Am., Inc.*, 465 So. 2d 1285, 1292 (Fla. 1st DCA 1985) (a limited warranty fails in its essential purpose when the warranty limits the buyer's remedy to repair or replacement of defective parts and the buyer, after purchase, experiences repeated problems and the seller is unable to repair the defect after repeated attempts).

Last, Kelly contends that because Newmar made repairs free of charge to the RV after the warranty coverage period expired, the RV remained defective. (Dkt. 48, p. 6). That argument, however, is not supported by authority and is belied by the record evidence. Nor does it satisfy the elements that must be established for a breach of warranty claim.

In sum, Kelly has not demonstrated that a genuine issue of material fact exists as to whether the RV is defective.[13] And because she has not presented evidence that Newmar either failed to repair any defect brought to its attention during the coverage period of the limited warranty or that one continues to exist, she cannot establish an underlying breach of warranty claim. Accordingly, her MMWA claim against Newmar for breach of express warranty fails as a matter of law. *See Bailey*, 350 F. Supp. 2d at 1047.

### B. Counts III and IV: Breach of Florida's Statutory Warranty

In Counts III and IV, Kelly alleges that both Newmar and North Trail breached the warranties provided by Florida Statute § 320.835. Section 320.835 provides that each manufacturer and dealer of RVs shall warrant each recreational vehicle, "in accordance with the warranty requirements prescribed by this section, for a period of at least 12 months, measured from . . . the

---

[13] Kelly also includes a section in her response titled "Plaintiff Has Shown Evidence Demonstrating A Genuine Issue of Material Fact Exists Whether Defects in Plaintiff's RV Constitute a Substantial Impairment to Its Use, Value, or Safety." (Dkt. 48, p. 15). However, this section is devoid of any citations to the record and she cites to Florida's Lemon-Law, Fla. Stat. § 681.104, to argue that "[a] consumer has a right to a refund or replacement of his vehicle if he can show" a violation of the statute. Notably, this is the first time Kelly raises a Lemon-Law claim, and accordingly, will not be considered. Notwithstanding, because it has already been determined that she cannot establish an underlying MMWA claim, any argument relating to her remedies is immaterial.

18

date of sale." *Id.* The statute provides certain warranty requirements for both manufacturers and dealers of RVs. Manufacturers of RVs warrant "that all structural elements; plumbing systems; heating, cooling, and fuel-burning systems; electrical systems; fire prevention systems; and any other components or conditions included by the manufacturer are free from substantial defect." *Id.* at (1)(a). Dealers warrant "[t]hat any modifications or alterations made to the mobile home or recreational vehicle by the dealer or authorized by the dealer shall be free from substantial defect. Alterations or modifications made by a dealer shall relieve the manufacturer of warranty responsibility only as to the item altered or modified." *Id.* at (2)(a). Importantly, the existence of a "substantial defect" is necessary to establish a breach of statutory warranty under Section 320.835.

Because North Trail is a dealer, it is subject to the § 320.835(2)(a) warranty. To establish liability under this warranty, Kelly must show that a substantial defect exists in an "alteration or modification" made by North Trail. *Id.* According to the parties, the only addition or modification to the RV was North Trail's addition of the rear awning. (Dkt. 42, p. 9; Dkt. 52, p. 11). Kelly, however, offers no evidence that this addition suffers from a substantial defect. Indeed, her testimony is to the contrary. According to her, the rear awning works properly. (Dkt. 41-2 at 122:7-9). Because no genuine issue of material fact exists as to whether a substantial defect exists in the rear awning, North Trail is entitled to summary judgment on Count III.

As to Count IV, Newmar, as the manufacturer, is subject to the § 320.835(1)(a) warranty. To establish liability under this warranty, Kelly must show that a substantial defect exists in one of the parts or systems listed in the statute. However, for the same reasons her breach of express warranty claim in Count II fails, her breach of statutory warranty in Count IV fails. Put simply, Kelly fails to identify any record evidence that shows an unrepaired Newmar defect that was

19

present in the RV during the first twelve months of her ownership. *See* Fla. Stat. § 320.835. Accordingly, Newmar is entitled to summary judgment on Count IV.

## V. CONCLUSION

For the reasons discussed, Kelly has failed to establish that a genuine issue of material fact exists as to Counts I through IV. Accordingly, Defendants' motions for summary judgment are **GRANTED**. All pending motions are **DENIED** *as moot*. The Clerk is directed to enter judgment in favor of Defendants, and **CLOSE** the file.

**DONE AND ORDERED** this __12th__ day of November, 2019.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record